### Ritter *et al. v.* Fagin *et al.*

Turner, J.   The plaintiffs having failed on the trial to prove their case as laid, the court below properly sustained the defendants' motion to nonsuit.

*Judgment affirmed.   All the Justices concur.*

Argued March 11, — Decided March 30, 1904.

Equitable petition.   Before Judge Lumpkin.   Fulton superior court.   June 3, 1903.

The case made by the petition was, in brief, that the three plaintiffs and the defendant Mrs. Fagin (sisters), at some time between 1883 and 1885, being possessed of no property, and their father being helpless, orally agreed that the plaintiffs should go out and work for wages which they would turn over to said defendant, who should remain in charge of the household and hold the purse and whatever property might be accumulated by the combined efforts of all, and that whatever the plaintiffs might be able to earn above what was necessary for their own subsistence should be placed in a common fund in the control of Mrs. Fagin (who was then unmarried), out of which fund she should pay the expenses of the household, and any surplus should be invested by her in her name but for the equal benefit of all, the desire of all the parties to the agreement being to procure a home for them all; that the plaintiffs did hire themselves out to work in factories and wherever they could obtain employment, and by self-denial saved from their earnings, from 1885 to 1889, about $2,000, all of which was contributed by them to the common fund, and was used by Mrs. Fagin partly in meeting the household expenses and partly in buying certain realty; that during the continuance of this agreement she earned no money ; that about 1886 she was severely injured by a fall, and thereby rendered a helpless cripple for three and a half years and an invalid for much longer, and was cared for at the expense of the fund to which the plaintiffs contributed, and, being wholly dependent on the plaintiffs for support and care, she expressly agreed that, in consideration they would care for and support her during the time of her helpless-

ness, whatever sum she might receive by way of damages for her injury should be made a part of said common fund and be invested with the rest of it for the benefit of all; that in 1888 she received $1,000 as such damages, which sum was made a part of said common fund; that with this fund was purchased 70 acres of land, the title being put in Mrs. Fagin, but it being understood that, as the fund was the result of the united efforts of all, the purchase was for the equal benefit of all; that this land was im-proved with moneys belonging to said common fund, and afterwards about half of it was sold and the proceeds reinvested in other realty and improvements thereon; that not until 1899 (when she married) did Mrs. Fagin deny the agreement before stated, but often admitted that whatever property she held was the product of the savings of all and was held by her for the bene-fit of all; and that under the facts a trust resulted for the benefit of the plaintiffs in the property so held by Mrs. Fagin.    They pray to be declared tenants in common with her, and for judgment that they recover a three-fourths interest therein.    Most of the allegations of the petition were denied by Mrs. Fagin.    She admitted that of the $1,000 received by her as damages she invested $612 in land and the rest in improvements of the land and personal property; and that she realized $1,900 from the part of the land she sold, and reinvested this in other property.

The testimony discloses the following: The mother of the parties died in their childhood; their father was a bad manager, and drank.    They lived very poorly, and, before the making of the contract in question, worked in the field.    About 1884 or 1885 the plaintiffs entered into an agreement with their elder sister (now Mrs. Fagin), that they would go out and work for wages, while she was to stay at home, do the house work, hold the pocket-book, and take care, as best she could, of what they made, and all they made was to go together, and they all were to share alike; and if they made any more than living expenses, the surplus was to be put into property for the benefit of all of them (five sisters, one of whom died in January, 1889).    As far as it would go, they were to put it into a home.    The plaintiffs thereupon went to work in factories, where two of them made 45 to 50 cents a day for three to four years.    One of these two made 60 to 75 cents a day for about two years more.    The third made

60 to 75 cents a day for about a year, 75 cents to one dollar a day for about three years, and $1 to $1.25 a day for two years more; after which she earned, above her board and washing, $10 a month for four years, and $15 a month for another four years. She then lived with Mrs. Fagin for two years, up to some time in 1899, when she married.    During these two years she peddled milk and butter from a dairy they conducted with the assistance of a hired man, and turned over to Mrs. Fagin the money from the sales of the milk and butter.    The wages of the plaintiffs for their factory work were turned over by them to Mrs. Fagin, who bought their clothing, consisting of cotton goods and cheap shoes, costing, as plaintiffs supposed, not over $20 a year for each of them.    There were eight or nine persons in the household, all of whom had to be supported out of the earnings of the family. The father did not work to amount to anything.    He rented a farm, and hired work done, for which "we" paid.    One of the plaintiffs testified:    "I know it did not take all we made to support the family, because I would see her [Mrs. Fagin] with money . . often.   I do not know the amount.   She kept it.   She did not spend all of it for the family.    I know she did not spend it all, because she always had money; any time you went to her she had money."    Another testified that she did not think it took all of their earnings to support the family; she could not tell how much it took; but Mrs. Fagin always had some money left when witness brought in her wages.    They bought a horse and wagon. They had a cow when plaintiffs went to work in the factory; then they raised one, and bought another with money the plaintiffs earned.    One of the plaintiffs married in 1889, another in 1891; and thereafter neither of these two contributed anything to the family support.    The third plaintiff married in 1899, and Mrs. Fagin married in December of that year.    Until she was crippled by a fall in 1886, she carried out her part of the contract by doing the house work.    She was in bed for three months, and "laid up" or "on crutches" for three to four years.

As to the damage money, Mrs. Fagin said to plaintiffs, if she ever recovered anything, she and they should all share alike, if they would take care of her.    They did so, furnishing the food, clothing, and nursing, and paying the medical bills.    In 1888 Mrs. Fagin received $1,000 as damages for her injury, and out of

this paid $612.50 for certain land conveyed to her.     Her brother testified:    "I negotiated that trade for my sisters. . . They had some money, and they decided to buy them a little home. . . I asked them how to have the deed made.     Mrs. Fagin was present; it was talked over in her hearing, when she was present; it was talked over to her.     I asked them all. . . I think every one was present.     My sister who is dead was present, and she said to Meda [Mrs. Fagin], 'If we take a notion to divide it, we can divide it.' . . I had a talk with [Mrs. Fagin] while she was lying up with that injury. . . She told me, when they spoke about buying this land, that they had decided to buy the land and have a home for them all, and it would be theirs."     One of the plaintiffs testified:    "From the time we entered into this contract up until Mrs. Fagin married she never denied our interest in this property. She never said anything about the property belonging to her individually, up to the time she married, but she said it belonged to us all; she said it often time and again when she was crippled." The other two plaintiffs testified that the first time they learned that Mrs. Fagin disputed their interest in that property was after she married.     About the time the land was bought, it was talked about among the five sisters and their brother.     He asked about how the title was to be made, "we" told him to put it in the name of Mrs. Fagin.     It was to keep a home for "us" as long as "we all" stayed together.     Mrs. Fagin told their brother that they had decided to buy them a home; it was to be their home.

*Burton Smith, J. W. Moore, George Gordon,* and *J. D. Kilpatrick,* for plaintiffs.     *W. R. Daley, Aldine Chambers,* and *W. M. Smith* for defendants.